## COMMONWEALTH *vs.* TIMOTHY KIMBALL.

*It seems,* that a count for a nuisance at common law, by keeping a disorderly house, may be joined in the same indictment with a count on *St.* 1855, *c.* 405, § 1.

A *nolle prosequi* may be entered after the empanelling of the jury, against the objection of the defendant, if he does not demand a verdict.

The character of women frequenting a house, and the character of their conversation in the house, are competent evidence on the trial of an indictment under.*St.* 1855, *c.* 405, § 1, against the keeper of the house.

An indictment on *St.* 1855, *c.* 405, § 1, which avers that the defendant, at a certain time and place, " did keep and maintain a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness, and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors, the said building so used as aforesaid being then and there a common nuisance, to the great injury and common nuisance of all the peaceable citizens of said commonwealth, there residing," &c., is not bad for deplicity; and is sufficient, without alleging that the building was used by the defendant for the purposes enumerated; and does not require, to support it, evidence of the building's having been used for more than one of the purposes enumerated, or of its having been a common nuisance to the whole community.

In an indictment on *St.* 1855, *c.* 405, § 1, it is sufficient to allege that the building in question was " used for the illegal sale and keeping of intoxicating liquors," without more distinctly averring that the keeping was illegal, or that the sale or the keeping was without appointment or authority.

INDICTMENT containing two counts; one for keeping a disorderly house, which was a nuisance at common law; the other on *St.* 1855, *c.* 405, § 1, and averring that the defendant, at Raynham, " on the first day of October in the year of our Lord one thousand eight hundred and fifty five, and on divers other days and times between that day and the day of the finding of this indictment, did keep and maintain a certain building, to wit, a dwelling-house, used as a house of ill fame, resorted to for prostitution, lewdness, and for illegal gaming, and used for the illegal sale and keeping of intoxicating liquors; the said building so used, as aforesaid, being then and there a common nuisance; to the great injury and common nuisance of all the

peaceable citizens of said commonwealth there residing, inhabiting and passing; against the peace and dignity of said commonwealth, and contrary to the form of the statute in such case made and provided."

Trial in the court of common pleas, before *Morris,* J., who signed the following bill of exceptions :

" After the empanelling of the jury, the defendant objecting, the district attorney, with the permission of the court, entered a *nolle prosequi* on the first count; but the defendant's counsel did not claim or ask for a verdict upon said first count. The trial proceeded upon the second count.

" The court, notwithstanding the defendant's objections, permitted witnesses for the Commonwealth to be asked, ' What was the character of the conversation among the women at that house ? ' although it did not appear that the defendant heard it; and, ' Were, or not, the women whom you saw at the house prostitutes ? '

" The defendant offered no evidence ; but asked the court to instruct the jury, that if they did not find that the building kept and maintained by the defendant was used for all the purposes alleged in the indictment, they could not find the defendant guilty. The court declined to give the instruction asked for ; but instructed the jury, that if the house was kept for either of the purposes alleged in the indictment, then they might find the defendant guilty.

" The defendant also requested the court to instruct the jury, that unless the building in question, as used and resorted to, was a common nuisance to the whole community in general, the defendant could not be found guilty. But the court instructed the jury, that if they found that the house in question was, while kept and maintained by the defendant, either used as a house of ill fame, resorted to for prostitution, lewdness, or for illegal gaming, or used for the illegal sale or keeping of intoxicating liquors, then the said house was, by the terms of the statute, a common nuisance.

" The jury rendered a verdict of guilty, and the defendant excepted to all the aforesaid instructions and rulings."

28 *

The defendant also moved in arrest of judgment, because the second count in the indictment was bad for duplicity; and because it did not allege that the house was used by the defendant, nor by whom it was used. This motion was overruled, and the defendant excepted to this ruling also.

*E. L. Barney*, for the defendant.

*J. H. Clifford*, (Attorney General,) for the Commonwealth.

BIGELOW, J. 1. There was no misjoinder of counts in the indictment. The offences charged in the two counts, being of the same nature, might well be included in one indictment. 1 Chit. Crim. Law, 248.

But if this objection were valid, it could not now avail the defendant, because it was cured by the *nolle prosequi* of the first count. After the jury had been empanelled, the defendant had a right to demand a verdict on both counts. This he did not do. If he had asked for a verdict on the first count, and it had been refused by the court, it would have been a valid ground of exception. *Commonwealth* v. *Tuck*, 20 Pick. 365. Not having insisted on a verdict at the trial, he cannot now make the *nolle prosequi* a matter of exception.

2. The character of the women in the house, and the character of their conversation in the house, were direct and pertinent evidence of the character of the house. All this evidence related to what took place within the house; which distinguishes this case from that of *Commonwealth* v. *Harwood*, 4 Gray, 41.

3. There is no duplicity in the second count of the indictment on which the defendant was convicted. It charges only one offence—the maintenance of a common nuisance. The allegation of the various different purposes for which the premises were used, constituting the means by which the nuisance was created, was mere matter of description; and although each of them might be criminal in its nature, yet they are not charged as distinct offences, but only as forming the elements which made up the single offence of a nuisance, which is the misdemeanor charged in the indictment.

4. The offence of the defendant consisted in keeping and main-

taining the house. It was not necessary to allege or to prove that it was used by him, or by whom it was used.

5. Nor was it necessary to prove that the premises described in the indictment were used for all the purposes therein alleged. If any one of them was proved, it was sufficient to support the charge, because the statute provides that such use shall be deemed to be a common nuisance. The proof of all would amount to no more. In either case, whether one or all were proved, the same offence would be made out, and the defendant would be liable to the same penalty.

It is analogous to the familiar case of an indictment in which a party is charged with the larceny of several different articles. It is not necessary to prove that all the articles named were stolen. It is sufficient if the larceny of one or more is proved. It is a general rule, which runs through the whole criminal law, that it is sufficient to prove so much of the indictment as shows the defendant to have been guilty of a substantive crime therein stated, though not to the full extent charged against him. 1 Chit. Crim. Law, 558. 1 Deac. Crim. Law, 458. *Commonwealth* v. *Armstrong, ante,* 50.

It follows that a conviction under this indictment, upon proof that the premises were used for any one of the purposes alleged, would be a good bar to another prosecution, covering the same period, for a nuisance caused by any other unlawful use or occupation of the premises. The offence is one and the same, however it may be proved.

6. The indictment in the present case is framed according to the established precedents in criminal pleading, adapted to such offences, in which it is usual to allege that the premises are used for various distinct unlawful purposes. The gist of the offence is keeping such a house to the common nuisance, and under a general charge proofs of particular instances may be given. Nor is it necessary to prove, in support of the charge, any particular annoyance to the public or the neighborhood. The nuisance consists in drawing together dissolute persons engaged in unlawful practices, thereby endangering the public peace, and corrupting good morals. *Rex* v. *Higginson,* 2 Bur. 1233. *J'Anson* v. *Stuart,*

1 T. R. 754. *Clarke* v. *Periam*, 2 Atk. 339. 2 Chit. Crim. Law 39, *note.* 3 Chit. Crim. Law, 671. *Exceptions overruled.**

---

* In the cases of COMMONWEALTH *vs.* MICHAEL KELLEY, and COMMONWEALTH *vs.* EDWARD FRANCE, the defendants were convicted at June term 1857 of the court of common pleas, upon indictments precisely similar, except in inserting, after the words " intoxicating liquors," this averment: " Whereby, and by force of the statute in such case made and provided, the said building, then and there kept and maintained by the said defendant, and then and there used and resorted to as aforesaid, was then and there a common nuisance." Each defendant moved in arrest of judgment, for the following reasons : " Because the said count does not set forth that the building was used by the defendant for the illegal sale and the illegal keeping of intoxicating liquors; neither does it sufficiently set forth that the sale or keeping of intoxicating liquors was without appointment or authority, with substantial certainty ; neither does it allege and set forth the facts which constitute a house or building used for illegal gaming, or one used for the illegal sale or keeping of intoxicating liquors." *Bishop,* J. overruled the motions, and the defendants alleged exceptions, which were argued at October term 1857, by *J. Brown,* for Kelley, *J. C. Blaisdell,* for France, and *I. H. Clifford,* (Attorney General,) for the Commonwealth, and overruled